## A05A0538. GRAND v. HOPE.
(617 SE2d 593)

RUFFIN, Chief Judge.

Mark D. Grand appeals from a judgment against his ex-wife that awarded him more than $40,000 in damages. Grand contends that the trial court erred by determining his right to damages instead of deciding the amount that he was due. He also claims that the court failed to award damages that he properly established at trial. For the reasons that follow, we vacate the judgment below.

At the time that Grand married Ginni Hope in 1994, she had two young daughters, Rachel and Shana, from her former marriage to Daniel McDonald. Shortly after marrying Hope, Grand filed a petition to adopt Rachel and Shana, and in June 1995, his petition was granted. During the next several years, Grand helped support Rachel and Shana. At some point, the couple adopted twins. When Grand and Hope divorced in December 2000, the divorce decree ordered Grand to pay monthly child support of $1,400 for Rachel and Shana to be offset by Hope's payment of $400 in child support for the twins. In September 2001, after Grand obtained custody of Rachel, his net obligation fell to $850 per month for the support and maintenance of Shana.

More than seven years after adopting Rachel and Shana, Grand filed a "Complaint for Damages for Fraud" against Hope in November 2002. Grand alleged that Hope had made fraudulent misrepresentations about McDonald, her ex-husband, which induced him to adopt Rachel and Shana. Specifically, Grand claimed that Hope had "fraudulently represented" that she did not know how to contact McDonald and that McDonald had abandoned the girls. Asserting that he had detrimentally relied on Hope's misrepresentations, Grand sought "actual damages for the amounts that he paid for the support and maintenance of Rachel and Shana based on [Hope's] fraudulent misrepresentations that their biological father had abandoned them." Grand sued to recover a total of "approximately" $104,786, which he claimed to have expended for Rachel and Shana during his marriage to Hope and in child support subsequent to their divorce. In addition, Grand sought punitive damages for his ex-wife's "willful misrepresentations as well as for the vicious and unconscionable nature of her misrepresentations."

After Hope failed to respond to Grand's lawsuit, the case went into default. The trial court held a hearing on damages. As evidence of his damages, Grand submitted three exhibits: E-1, a listing of checks paid for child support; E-2, a billing statement from an orthodontist for $7,871 for services provided to Rachel and Shana;

and E-3, a voluminous stack of documents that purported to reflect expenditures made on behalf of the children less the orthodontist's bill in E-2.

Appearing pro se, Hope contested Grand's entitlement to damages and his calculation of those damages. Hope disputed Grand's list of purported expenditures for the children during the marriage and his calculations of child support thereafter. Grand conceded that he lacked specific documentation for some of the expenses for which he sought reimbursement. Grand also admitted that, even had he not adopted the children, he would have provided some financial assistance and contributions for them.

Hope denied receiving child support from McDonald other than some of McDonald's past arrearage owed before the adoptions. Hope also stated that she and Grand had retained counsel who had searched for McDonald "to no avail" and undertaken the legal work for the adoptions.[1]

Finding itself constrained by Hope's failure to answer the complaint, the trial court noted, "I really don't have any choice but to grant the default judgment on the issue of liability." The court explained to Hope,

> I'm not going back to decide whether or not this is an action for fraud or not. That issue was decided by default because you failed to respond to the pleadings. I have to, by law. I'm bound. It's not a matter of discretion that I have. I have to assume, based upon the failure to respond to the pleadings, that the pleadings are correct.

The court continued, saying, "based upon the Court's consideration of the evidence, I am not awarding damages based upon any support paid for the children. That's an obligation that there may have been a remedy for but it's not a remedy in this case." In awarding punitive damages, the trial court apparently found itself bound by Grand's complaint to find the existence of fraud. The court awarded Grand $7,871 in actual damages (the exact total of the bills from the orthodontist), $24,000 in punitive damages, and $8,786 in attorney fees. Grand appeals.

1. In two intertwined enumerations of error, Grand contends that the trial court erred by exceeding the scope of authority set forth in

---

[1] Rachel, then age 20, testified that she had not spoken to McDonald in more than 11 years. She also testified that she had not had any contact with McDonald after her mother married Grand. See *Spires v. Tarleton*, 225 Ga. App. 117, 119 (2) (483 SE2d 337) (1997) (unjustifiable failure to communicate with a child or to provide support for a child for more than a year can warrant termination of parental rights).

OCGA § 9-11-55 (a) in ruling upon the right to damages as distinct from deciding the amount of damages to which he was entitled. He claims that there was "no rebuttal to [his] evidence that he paid a total of $54,667.00 in monthly child support as well as expenses for the fraudulently adopted daughters."

Grand also contends that the trial court erred "in judicially creating an exception to the law of damages for fraud." Pointing out that the trial court refused to award damages based on his monthly child support payments, payments for medical expenses (except for the orthodontal ones), and payments for tuition and school-related expenses, yet awarded the orthodontal expenses, Grand contends that "the trial court was inconsistent in its award of damages." We agree. At the outset, we note that, by obtaining the default on liability, Grand managed to create a bizarre situation — without seeking to set aside the adoption order or the divorce decree, Grand has implicitly launched collateral attacks on both judgments. Yet, "[u]nder Georgia law, unless a judgment is void on its face, it may not be attacked collaterally."[2] A judgment of a court having jurisdiction over the parties and the subject matter is presumptively binding until set aside in a manner prescribed by law.[3] This is true regardless of any purported irregularity or error in the judgment.[4]

It is undisputed that Grand filed a petition to adopt Rachel and Shana and that a final order of adoption was entered.[5] Therefore, the decree of adoption remains presumptively valid and enforceable. Similarly, the record contains no evidence that the divorce decree was set aside. As such, it likewise remains in full force and effect. In light of these two existing judgments, the recovery of past expenditures made on behalf of Rachel and Shana is problematic. All parents have a statutory duty to support their children.[6] By law,

[i]t is the joint and several duty of each parent to provide for the maintenance . . . of his or her child until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs, except as otherwise authorized and ordered pursuant to subsection (e) of Code Section 19-6-15 and except to the extent that the duty of the parents is otherwise or further defined by court order.[7]

---

[2] *Shepherd v. Epps*, 179 Ga. App. 685, 686 (1) (347 SE2d 289) (1986).

[3] See *The Matthews Group & Assoc. v. Wages*, 180 Ga. App. 151, 152 (2) (348 SE2d 695) (1986).

[4] See *Mitchell v. Arnall*, 203 Ga. 384, 385 (4) (47 SE2d 258) (1948).

[5] See OCGA § 19-8-6 for the rules governing adoptions by a stepparent.

[6] See *Dept. of Human Resources v. Cowan*, 220 Ga. App. 230, 231 (1) (469 SE2d 384) (1996).

[7] OCGA § 19-7-2.

In June 1995, when the judgment was entered on Grand's adoption petition, Grand became and still remains the legal parent of Rachel and Shana.[8] As their parent, Grand incurred a statutory duty "to provide for the maintenance"[9] of his daughters and to pay for their "necessaries."[10] Parents are generally responsible for the medical expenses incurred in the treatment of their minor children.[11] By statute, Grand had a joint and several duty to pay for the care of Rachel and Shana, including the orthodontist's bills for the treatment provided to his daughters, as well as the other expenses incurred on their behalf.[12] In fact, during the bench trial, Grand's lawyer acknowledged that Grand had a continuing obligation to pay child support for Shana, a minor at the time of trial.[13] As Grand's lawyer explicitly told the trial court, "[w]e recognize that we have a continuing obligation to pay child support." In other words, while simultaneously recognizing his ongoing obligation to pay child support for Shana, Grand was seeking to recover as "damages" all of his past child support payments for Rachel and Shana and also all expenditures incurred in providing for them as their parent.

It is axiomatic that a default does not result in the admission of allegations that are not well-pled or that are the result of forced inferences.[14] "The failure to answer or to appear at trial serves as an admission of the facts alleged in the complaint, but not of the conclusions of law contained therein."[15] So while a default operates as an admission of the well-pled *factual* allegations in a complaint, it does not admit the legal conclusions contained therein.[16] A default simply does not require blind acceptance of a plaintiff's erroneous conclusions of law.[17] Nor does a default "preclude [a defendant] from showing that under the facts as deemed admitted, *no claim existed which would allow [the plaintiff] to recover*."[18]

---

[8] See generally *McCurry v. Harding*, 270 Ga. App. 416, 419 (2) (606 SE2d 639) (2004) (adoption by stepparent will not be set aside when record shows that for a year or longer before petition for adoption was filed, the biological father failed to make a bona fide effort to communicate with child and to provide for the child's care).

[9] OCGA § 19-7-2.

[10] See *Blue Ridge Park Nurseries v. Owen*, 41 Ga. App. 98-99 (4) (152 SE 485) (1930).

[11] See *Southern Guaranty Ins. Co. v. Sinclair*, 228 Ga. App. 386, 387 (491 SE2d 843) (1997).

[12] See id.; OCGA § 19-7-2.

[13] Rachel apparently became emancipated in January 2002.

[14] See *Stroud v. Elias*, 247 Ga. 191, 193 (1) (275 SE2d 46) (1981).

[15] Id.

[16] See id.

[17] See id.

[18] (Emphasis supplied.) *ServiceMaster Co. v. Martin*, 252 Ga. App. 751, 752-753 (1) (556 SE2d 517) (2001); see also *Standridge v. Spillers*, 263 Ga. App. 401, 404 (2) (587 SE2d 862) (2003).

Implicit in Grand's lawsuit is an unsupported legal theory or conclusion of law that he is entitled to recover as damages all of his past costs and expenditures that he incurred in supporting his own children, expenses that he now attributes to Hope's purported fraud. Grand has not cited — and we have not found — any legal authority authorizing such damages. In essence, Grand is trying to obtain damages for which there is no basis in law.[19] For public policy reasons, we do not believe that Grand can recover child rearing expenses and child support costs for which he was under a legal obligation to pay. Nor do we believe that Grand is authorized to launch a collateral attack on the adoption and divorce decrees by means of filing an action for fraud against his ex-wife.

In *Roddenberry v. Roddenberry*,[20] the Supreme Court recognized an extraordinary motion for new trial (based on newly discovered evidence) as the proper procedural vehicle to challenge a consent judgment that resolved child support issues. But, Grand did not file an extraordinary motion for new trial and nothing in *Roddenberry* supports the damages that Grand is attempting to recoup here.[21]

OCGA § 19-7-54 involves proceedings to set aside paternity, something that Grand does not seek to do here. And, OCGA § 19-7-54 (b) (2) specifically states that the statutory procedures for monetary relief for child support payments do not apply to fathers who adopt a child. But the new statutory procedures specifically limit the monetary relief available to "the issues of *prospective* child support payments (and) *past due* child support payments."[22] By litigating these matters as a fraud claim, Grand simply seeks to do indirectly what he cannot do directly — recoup past payments that he made to third parties on behalf of his own children.

Grand's reliance upon *Cohen v. Nudelman*[23] is likewise misplaced because that case is readily distinguishable both factually and legally. The *Cohen* case did not involve an adoption by a stepparent who knew that he was not the child's biological parent, but involved a parent who had mistakenly believed that he was the child's biological father.[24] Nudelman filed an extraordinary motion for new trial

---

[19] See generally *Ghrist v. Fricks*, 219 Ga. App. 415, 422 (4) (465 SE2d 501) (1995) (trial court was directed to dismiss father's counterclaim filed in the alternative for fraud against ex-wife after father's parental rights were reinstated).

[20] 255 Ga. 715, 717 (342 SE2d 464) (1986).

[21] See id.

[22] (Emphasis supplied.) *Cohen v. Nudelman*, 269 Ga. App. 517, 522 (4) (604 SE2d 580) (2004); see OCGA § 19-7-54 (d).

[23] *Cohen*, supra at 518-519 (1).

[24] Id. at 518.

in which he sought to set aside a prior paternity order.[25] He based his extraordinary motion on newly discovered scientific evidence that he was not the biological father of the child as he had been misled by his former wife to believe.[26] Under *Roddenberry* and its progeny, Nudelman's action was procedurally authorized.[27] Grand's action was not.

It is axiomatic that "[t]o establish a cause of action for fraud, a plaintiff *must show that actual damages, not simply nominal damages, flowed from the fraud alleged.*"[28] For this reason, "an award of nominal damages for fraud is improper" when actual damages are not shown to flow from the alleged fraud.[29] Moreover, "[w]here there is no evidence of injury accompanying the tort, an essential element of the tort is lacking, thereby entitling the defendant to judgment in his favor."[30]

Here, the only "actual damages" awarded to Grand was the amount of $7,871, the exact cost of Rachel and Shana's orthodontal treatment. But Grand was not entitled to recover for that expense because as their parent, Grand remained under a legal duty for their medical treatment.[31] Since the adoption and divorce decrees remained in full effect, Grand's obligation to support his daughters likewise remained in effect, and he cannot recover as damages in the instant proceeding the expenditures that he incurred on their behalf. Further, we note that where a party fails to obtain any of the relief sought, he is "disqualified . . . from an award of attorney fees" and such award is improper.[32] Because we find that the legal basis on which the trial court awarded damages and attorney fees is not entirely clear, we vacate the judgment below and direct the court to enter a judgment consistent with this opinion.[33]

2. In light of our holding in Division 1, Grand's remaining issue is moot.

---

[25] Id.

[26] Id.

[27] *Roddenberry*, supra at 717.

[28] (Emphasis supplied.) *Glynn County Fed. Employees Credit Union v. Peagler*, 256 Ga. 342, 344 (2) (348 SE2d 628) (1986).

[29] *Stiefel v. Schick*, 260 Ga. 638, 639 (2) (398 SE2d 194) (1990); *Hopkinson v. Labovitz*, 263 Ga. App. 702, 705 (1) (b) (589 SE2d 255) (2003).

[30] (Punctuation omitted.) *Parris v. State Farm &c. Ins. Co.*, 229 Ga. App. 522, 525 (494 SE2d 244) (1997).

[31] See *Sinclair*, supra at 387.

[32] *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 529 (3) (543 SE2d 32) (2001) (failure to obtain relief that was being sought foreclosed an award of attorney fees).

[33] Where a party fails to establish actual damages that flowed from the alleged fraud, punitive damages are not authorized. Thus, when an award of actual damages fails, the award of punitive damages must likewise fail. See *Peagler*, supra; *Stiefel*, supra at 639 (2). OCGA § 51-12-5.1 (b) requires an award of punitive damages be supported by clear and convincing evidence. In the judgment here, the trial court entered no such finding.

*Judgment vacated and case remanded with direction. Johnson, P. J., and Barnes, J., concur.*

DECIDED JULY 8, 2005 —
RECONSIDERATION DENIED JULY 27, 2005 — ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Banks, Stubbs, Neville & Cunat, Robert S. Stubbs III, Dana A. Azar,* for appellant.

Ginni Hope, *pro se.*